[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
CT Page 7432
This case is one of four consolidated cases brought against the defendant, The Mead School for Human Development. In each case, the defendant filed a Motion to Strike the plaintiffs' amended complaints. Oral arguments on all four Motions to Strike were heard by this court on October 26, 1998.
In the present case, the plaintiffs, Gregg and Bruny Scalzi, bring this action individually and as parents, next friends and legal guardians of their children, Christopher and Lara Scalzi, against the defendant, The Mead School for Human Development (Mead School or Mead), and Mead's director, Norman Baron (Baron). The plaintiffs' third amended complaint, dated March 4, 1998, contains nine counts, sounding in negligence (count one), willful and fraudulent misrepresentation (count two), Connecticut Unfair Trade Practices Act (count three), breach of contract (count four), tortious abuse (count five), unjust enrichment (count six), misappropriation of parental rights and authority (count seven), and intentional infliction of emotional distress against defendant Baron (count eight), and against defendant Mead (count nine). The defendants filed a Motion to Strike all counts of the complaint, and the plaintiffs' prayer for prejudgment interest.
STANDARD OF REVIEW
"The purpose of a motion to strike is to contest . . . the legal sufficiency of the allegations of any complaints . . . to state a claim upon which relief can be granted. . . . [W]e must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . If facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citations omitted; internal quotation marks omitted.) Peter-Michael, Inc. v. Sea Shell Associates,244 Conn. 269, 270-71, 709 A.2d 558 (1998). "[A] motion to strike does not admit legal conclusions or the truth or accuracy of opinions stated in the pleading at which the motion is directed."Fairfield Lease Corp. v. Romano's Auto Service, 4 Conn. App. 495,497, 495 A.2d 286 (1985)
The facts alleged by the plaintiffs and taken as true for purposes of this motion to strike can be summarized as follows. The Mead School is a private school in Riverside, Connecticut. CT Page 7433 The plaintiffs' son, Christopher, attended Mead beginning in the academic year 1988-89 through February 26, 1993. The plaintiffs' daughter, Lara, attended Mead beginning in the academic year 1990-91 through February 26, 1993. Defendant Baron was the director of the Mead School while the plaintiffs' son and daughter attended. The plaintiffs signed enrollment contracts with Mead for each child in each academic year and paid tuition to Mead. The plaintiffs received written and verbal progress reports on each child in each academic year. The plaintiffs were never told by anyone at Mead School that either child's reading, writing or arithmetic was below grade level or deficient, or that Lara might be suffering from a learning disability or disorder. The plaintiffs brought both children for diagnostic math testing in February 1993 after Gregg Scalzi noticed that Christopher could not solve basic math problems. The plaintiffs were told that the children were untestable due to a lack of basic math and reading skills. The plaintiffs then withdrew both children from the Mead School on February 26, 1993.
In August 1993, Christopher and Lara were given standardized Iowa Skills tests and were found to be deficient in reading, writing and arithmetic skills. Lara Scalzi was tested further by a licensed psychologist and diagnosed in June 1995 as being learning disabled and suffering from dyslexia and dysgraphia.
While a student at Mead, Christopher Scaizi attended a presentation by practitioners of "Wicca" or witchcraft without the plaintiffs' advance knowledge. Christopher also attended a mock witch trial. On one occasion, Christopher was held down by fellow students against his will while at school. He also witnessed other students fighting and a visitor's car being vandalized. Lara was punched by a male student and had chairs thrown at her. The same male student also cut her sneakers, cut her hair off, and on several occasions, attempted to pull up her dress. On one occasion, defendant Baron stared at Lara.
Count One
The first count is directed against the Mead School for negligence. The plaintiffs allege that Mead breached its duty "to identify and/or diagnose Lara's learning disabilities and/or refer Lara to an appropriate expert for identification or diagnosis of said learning disabilities . . . ." ¶ 19. The plaintiffs allege that Mead was negligent in not diagnosing Lara's dyslexia and dysgraphia; by failing to refer her for CT Page 7434 diagnosis; by providing the plaintiffs with false and inaccurate progress reports which lead them to believe Lara did not have a problem; and by failing to allow Lara to take written schoolwork home so they could have seen that she had a problem. ¶ 19a-d. The defendants move to strike on the ground that the Connecticut Supreme Court, like every other state court to consider such an action, has expressly declined to recognize such a cause of action.
The defendant cites Gupta v. New Britain Hospital,239 Conn. 574, 687 A.2d 111 (1996) in support of its contention that the Connecticut Supreme Court has rejected such a cause of action. The plaintiffs have not attempted to distinguish Gupta. Instead, they cite a Montana case, B.M. v. State, 649 P.2d 425
(Mont. 1982), to support a finding that Mead owed the plaintiffs' children a duty of care. In that case, the Montana Supreme Court found that the State, based on statutes governing special education, owed a duty of care to special education students. Id., 427. The plaintiffs suggest that Connecticut education statutes provide a framework for imposing that same duty of care in the present case.
The primary distinction between the Montana case and the present case is that the Montana case involved acts of public school officials and Montana's statutes and regulations imposed duties on such public school officials in regard to special education students. Id. In the present case, the defendant is a private school and Connecticut statutes regarding special education do not impose duties on private schools. General Statutes § 10-76a et seq.
In the present case, this court finds that the Supreme Court's decision in Gupta v. New Britain Hospital, supra,239 Conn. 574, controls this issue. In Gupta, the plaintiff was a physician who was dismissed from a residency training program at the defendant hospital. Id., 575. The plaintiff sued alleging that the defendant hospital violated his residency agreement and thereby breached his employment contract. Id. The trial court granted the hospital's motion for summary judgment after concluding that the residency agreement created an educational relationship rather than an employment relationship and that the plaintiff's dismissal was an academic decision, not an employment decision. Id., 580-81.
On appeal, the Supreme Court considered the plaintiff's claim CT Page 7435 that even if his dismissal was an academic decision, the hospital still breached its obligations under the residency contract by failing "to provide him a residency program that `would reasonably and adequately train him.'" Id., 589 90. The Supreme Court concluded that "[w]here the essence of the complaint is that [an educational institution] breached its agreement by failing to provide an effective education, the court is . . . asked to evaluate the course of instruction [and] called upon to review the soundness of the method of teaching that has been adopted by [that] educational institution . . . This is a project that the judiciary is ill equipped to undertake." (Citations omitted; internal quotation marks omitted.) Id., 590.
In analyzing the plaintiff's breach of contract claim, the court stated, "[i]n reality, a claim such as that advanced by the plaintiff raise[sl questions concerning the reasonableness of conduct by educational institutions in providing particular educational services to students — questions that must be answered by reference to principles of duty, standards of care, and reasonable conduct associated with the law of torts . . . Because these tort principles are difficult, if not impossible, to apply in the academic environment, courts have almost universally held that claims of `educational malpractice' are not cognizable. Among other problems for adjudication, these claims involve the judiciary in the awkward tasks of defining what constitutes a reasonable educational program and of decidina whether that standard has been breached. . . . In entertaining such claims, moreover, courts are required not merely to make judgments as to the validity of broad educational policies . . . but, more importantly, to sit in review of the day-to-day implementation of these policies." Id., 590-91.
Although the plaintiff's claim in Gupta was for breach of contract, the court's discussion of tort principles and the associa:ed policy considerations making their application difficult, if not impossible, was essential to its analysis. Implicit in the court's rejection of a breach of contract claim an sing from educational services, except in two specific situations, is a rejection of any claim for negligent education or educational malpractice. See also Bell v. West Haven Board ofEducation, Superior Court, judicial district of New Haven at New Haven, Docket No. 399597 (December 29, 1997, Hartmere, J.).
In count one, the plaintiffs allege that the Mead School was negligent in not diagnosing their daughter's learning CT Page 7436 disabilities and that she was deficient in basic academic skills. Based upon the Supreme Court's discussion in Gupta, of the difficulty of applying tort principles to claims based on a failure to provide an effective education, and its implicit rejection of a claim for negligent education, this court finds that a cause of action for negligent education, as alleged in count one, cannot be maintained. Accordingly, the defendant's motion to strike count one is granted.
Count Two
The second count is directed against the Mead School for willful and fraudulent misrepresentation. The defendants move to strike on the ground that the plaintiffs fail to state a claim because they do not allege misrepresentations of fact.
"The elements of fraudulent misrepresentation are as follows: (1) a false representation must be made as to a statement of fact; (2) the statement was untrue and known by the defendant to be untrue; (3) the statement was made to induce the plaintiff to act; and (4) the plaintiff acted on the false i representation to [its] detriment." (Internal quotation marks omitted.) WellingtonSystems, Inc. v. Redding Group, Inc., 49 Conn. App. 152, 164,714 A.2d 21 (1998)
In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court considered the plaintiffs' claims for fraudulent misrepresentation against the defendant school. There, the plaintiffs alleged that the defendant made representations that it was a school of the highest quality; it would provide an education superior to the public school system; it would provide the plaintiffs' son with individualized instruction in basic skills when needed; it would furnish periodic progress reports to the parents; and the plaintiffs' son was making adequate progress. Id., 873-74. The plaintiffs alleged that the representations were untrue in that the defendant did not provide their son with a quality education, the individualized instruction he needed, or a superior education to the public school, and that the defendant gave them false and misleading progress reports. Id., 874. The plaintiffs further alleged that the defendant made the representations to intentionally deceive the plaintiffs so that they would keep their son enrolled at the school and that the plaintiffs, in reliance on these representations, did keep their son enrolled. Id. CT Page 7437
The court in Paladino determined that the misrepresentations alleged were not actionable, although it recognized that intentional torts against educators are viable actions. Paladinov. Adelphi University, supra, 454 N.Y.S.2d 874. The court explained that the alleged misrepresentations concerning the quality of the defendant's educational program were statements of opinion, not "statements of fact capable of proof." Id.
The court found that the record contradicted the alleged misrepresentations about the accuracy of the progress reports provided. Id. "Clearly the record fails to bear out the claim that the school made false representations to the parents. The reports were not only accurate, but contradict any claim that the school engaged in a planned course of deception." Id., 875. The court also found that the record did not support a finding of the alleged misrepresentations by the defendant that it would provide necessary tutoring to the plaintiffs' son. Regarding that claim, the court stated, "[w]here the misrepresentation is a promise to perform a service in the future, an action for [fraudulent misrepresentation] is not available and the plaintiff is relegated to contractual remedies unless it can be shown that the promisor had no intention of performing the future act at the time the promise was made . . . Since special attention was given . . . and tutoring was in fact provided, the statement of future intention was kept and may not provide a basis for recovery." (Citations omitted.) Id.
The policy concerns underlying the Supreme Court's decision in Gupta v. New Britain Hospital, supra, 239 Conn. 574, preclude this court from allowing a cause of action to be maintained where an educational malpractice claim is simply dressed in different clothes. In the second count, the plaintiffs allege many facts that invite an improper inquiry for the court and therefore, alone, would not support any cause of action.
The plaintiffs have also alleged, however, facts, which if provable, would support a cause of action for fraudulent misrepresentation. The plaintiffs allege, for example, that the defendant provided false and/or misleading reports regarding their children's progress. These allegations are the same as ones made, but rejected, in Paladino. The court in Paladino, however, did not reject a claim based on those allegations because they were statements of opinion, but rather, rejected them because the evidence in the record contradicted them. This court, however, is faced with a motion to strike, whereas the court in Paladino was CT Page 7438 dealing with a motion for summary judgment and considered evidence in the record in deciding that the plaintiff could not maintain its claims for fraudulent misrepresentation. It is possible that the court might find, as in Paladino, that this count would not survive a motion for summary judgment. The court, however, is dealing with a motion to strike.
The motion to strike is used to test the sufficiency of a pleading. Peter-Michael, Inc. v. Sea Shell Associates, supra,244 Conn. 270 71. A court must deny a motion to strike if facts provable in the complaint would support a cause of action. In the present case, for example, the plaintiffs' allegation that defendant Mead provided false or misleading progress reports relates to a misrepresentation of fact. The plaintiffs have alleged that the defendant made misrepresentations willfully in order to induce them to enroll Christopher and Lara and/or keep them enrolled, and they did keep them enrolled based on these misrepresentations and were injured. This court concludes that facts provable in the second count would support a cause of action for fraudulent misrepresentation. The motion to strike the second count, therefore, is denied.
Count Three
Count three is directed against the Mead School for violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.[1] The defendants move to strike on the ground that this count is premised on claims of fraud and negligence that fail, so the CUTPA claim must also fail.[2]
The plaintiffs reallege paragraphs 1-23 of count two (fraudulent misrepresentation). They further allege that both they and the defendant are persons within the meaning of CUTPA, that the defendant was engaged in trade and commerce, and that the plaintiffs were consumers within the meaning of CUTPA. They allege that the actions of the defendant constitute unfair trade practices in violation of CUTPA. The court has found that the plaintiffs have alleged sufficient facts to state a cause of action for fraudulent misrepresentation, and therefore, is denying the defendants' motion to strike count two. The facts alleged in the fraud count (count two) are realleged in the third count and form the basis for the allegations of unfair trade practices. Because the alleged CUTPA violation is based on a cognizable fraud claim, the court finds that the plaintiffs have alleged facts sufficient to state a CUTPA claim. The defendant's CT Page 7439 motion to strike count three is denied.
Count Four
The fourth count is directed against the Mead School for breach of contract. The defendants move to strike on the ground that such a claim is precluded by the reasoning of the Connecticut cases rejecting a cause of action for negligent education.
In Gupta v. New Britain Hospital, supra, 239 Conn. 591, the Supreme Court found that the policy considerations that preclude a tort action based upon allegations of failure to provide an effective education were equally applicable when the action is based on a breach of contract claim. The court did, however, identify two situations where a claim for breach of contract might lie. Id., 592. In the present case, the plaintiffs argue that their allegations fall within both of these exceptions.
"The first [exception] would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . ." Gupta v. New Britain Hospital, supra, 239 Conn. 592 93. The court cited two cases supporting the exception based on a "fundamental failure" of the educational program — Wickstrom v. North Idaho College, 111 Idaho 450,725 P.2d 155 (1986); and Ross v. Creighton University, 957 F.2d 410, (7th Cir. 1992)
In Wickstrom v. North Idaho College, supra, 725 P.2d 155, the Idaho Supreme Court held that a cause of action in contract might be maintained where there was a failure to provide the fundamentals of a course. "Such fundamentals would include the number of days/hours required to complete a prescribed course of study and other objective criteria in a course's presentation. Such a failure to provide objective fundamentals, which could result in a breach of the implied contract between college and student, would not implicate the policy concerns regarding the viability of contract claims predicated upon the more subjective nuances of the teacher-student relationship (i.e., methodology of teaching and other matters usually raised under the rubric, `educational malpractice' . . .)." Id., 158 n. 1.
In Ross v. Creighton University, supra, 957 F.2d 410, the plaintiff alleged that the defendant university promised to CT Page 7440 provide him with an opportunity to obtain a meaningful education and a degree at the school in light of his significant academic limitations. Id., 411. The plaintiff's academic abilities differed significantly from the average student attending the defendant school. Id. The plaintiff alleged that he was induced to attend to play basketball for the defendant. Id. The court found that these allegations were more than a repackaging of the educational malpractice claims and were sufficient to state a cause of action for breach of contract. Id., 417. The court found that the complaint fairly alleged that the university made a specific promise that the plaintiff would be able to participate meaningfully in its academic program and it would provide specific services in order for him I to do so. Id. The plaintiff alleged that the defendant breached its contract and denied him a real opportunity to participate in the academic program by failing to perform five specific commitments it had to the plaintiff. The court determined that such a claim could be adjudicated without assessing whether the services provided were deficient, but rather by determining whether the plaintiff had been provided with any real or meaningful access to the university's academic program at all. Id. The court explained that the inquiry would be an objective assessment of whether the defendant attempted to perform on its promise, rather than an inquiry into whether the school had provided a deficient education. Id.
As demonstrated by Wickstrom and Ross, the alleged fundamental failure of the educational program must be objectively measurable. A claim that invites inquiry into subjective aspects of a program, such as quality or methodology, implicates the policy considerations the court discussed in Guptav. New Britain Hospital, supra, 239 Conn. 591, in rejecting a breach of contract claim except in very limited situations. A breach of contract claim can only be maintained where it does not implicate those policies, i.e., where the inquiry constitutes an objective assessment.
In the present case, the plaintiffs allege in paragraph 20 of count four that the plaintiffs had an agreement with the Mead School, whereby Mead in exchange for money was to provide Christopher and Lara with "an education." The plaintiffs allege that necessary components of such education were identification and nurturing of academic strengths and identification and remediation of weaknesses; and identification and/or diagnosis of learning disabilities. Count four, ¶ 20. Additionally, the CT Page 7441 plaintiffs allege that Mead's Director of Admissions, Karen Haslett, made the following promises or guarantees: (1) that Mead would fulfill the five tenets upon which its curriculum is based; (2) that Mead would develop Christopher and Lara into autonomous learners; and (3) that both children would be taught reading, writing and arithmetic and would excel in those areas. Count two, ¶ 19. The five tenets are contained in a document entitled, "About the Mead School." They are as follows:
"1. The Mead School is designed to provide students with self knowledge and to develop skills that lead to effective, autonomous learning. 2. The Mead School regards human development as a process and unconditionally values the individual's right to be his or her unique self. Simultaneously, it acknowledges the responsibilities of the individual in relation to the needs of the community. 3. The Mead School is committed to exposing students to a wide variety of information and knowledge and encourages exploration. 4. The Mead School is a good place to be. This does not mean that only good things happen at Mead, but that people are honored, accepted, supported, dealt with clearly and made to feel safe. 5. The Mead School is responsible and accountable. We are honest about what we stand for and about the responsibilities of staff, kids, and parents. And, we hold each constituent accountable for these responsibilities."
The plaintiffs further allege that the defendant breached agreements to teach and reinforce with Christopher and Lara, the basic skills necessary to read, write and do arithmetic. Count two, ¶ 21h. They allege that the defendant rejected the traditional academic discipline of spelling in favor of "magic spelling," whereby the children were encouraged to invent their own spelling of words. Count two, ¶ 21a.
The court finds that the promises alleged are vague, rather than specific as in Ross. A breach of any of the promises alleged is not objectively measurable. Inquiry into whether Mead breached its promises relating to teaching the basic skills necessary to read, write and do math, requires the court to look at both students' responses to Mead's educational program, and necessarily, its teaching methodologies. In conducting such an inquiry, the court would need to evaluate the reasonableness of the educational program, for example, the use of "magic spelling" as a teaching approach, its implementation and its effectiveness. This inquiry is the very type precluded by Gupta. The court also finds the alleged promise to fulfill the tenets to be vague, CT Page 7442 indistinguishable from a general obligation to offer a reasonable program and incapable of objective assessment.
The second instance identified by the court in Gupta where a breach of contract for inadequate education would be maintainable "would arise if the educational institution failed to fulfil a specific contractual promise distinct from any overall obligation to offer a reasonable program." Gupta v. New Britain Hospital, supra, 239 Conn. 592-93. The court cited two cases on this point — Cencor, Inc. v. Tolman, 868 P.2d 396 (Colo. 1994); and Paladinov. Adelphi University, 89 App.Div.2d 85, 454 N.Y.S.2d 868
(1982)
In Cencor v. Tolman, supra, 868 P.2d 396, the Colorado Supreme Court held that a breach of contract action could be maintained against the defendant vocational school where there were allegations that the school had made specific promises, such as promises to provide modern, functioning equipment, computer training, and qualified instructors, and did not do so. Id., 400. In Paladino v. Adelphi University, supra, 454 N.Y.S.2d 868, the court noted that a breach of contract action might lie if a school provided no educational services, or agreed to provide certain specific services such as a set number of hours of instruction, and failed to do so.
In the present case, the plaintiffs do not allege that Mead specifically promised to test the children for learning disabilities. Instead, they allege that the identification and/or diagnosis of learning disabilities, or referral for it, were necessary components of the agreement to provide Christopher and Lara Scalzi with "an education." Thus, the plaintiffs allege a breach of an implied promise. Under Gupta, an action for breach of an implied promise arising from educational services can be maintained if there is a fundamental failure of the educational program. For the court to find that a failure to identify and/or diagnose any learning disabilities or refer to an appropriate expert for such diagnosis, is a fundamental failure, the court would have to impose upon every private school the duty to test each student for learning disabilities. This, the court will not do. The plaintiffs' alleged promise by the Mead School to provide their children with "an education" is not a specific promise distinct from an overall obligation to offer a reasonable program.
The plaintiffs cite Village Community School v. Adler, 478 CT Page 7443 N.Y.S.2d 546 (1984) in support of their position. The Adler case, however, involved allegations that the school specifically represented that it could detect and treat any learning disabilities that Ms. Adler's children might have. In the present case, there is no such specific promise alleged. Instead, the plaintiffs assert that such a promise was implicit in Mead's agreement to provide an education to Christopher and Lara.
This court concludes that the plaintiffs, in the fourth count, do no more than allege that the defendant had a deficient academic program. The court finds that the allegations in count four do not fall within the exceptions to the rule barring claims for inadequate education identified in Gupta.
The court rejects the plaintiffs' argument that granting the motion to strike would leave them without a remedy, which would shock the conscience of the framers of our Connecticut Constitution. The plaintiffs argue that because administrative remedies are not available to plaintiffs in Connecticut, but are available to plaintiffs in other jurisdictions such as New York, a policy of judicial noninterference in educational issues is inappropriate in Connecticut. The fact that Connecticut does not regulate private schools to the same extent as other jurisdictions, such as New York, that recognize actions based on claims of inadequate education only in very limited circumstances, cannot form the basis for expanding the availability of such a remedy in this state. The problems applying tort principles to these claims remain. The courts of this state are an inappropriate forum for setting educational standards and determining classroom policy. These tasks are better left to professional educators. Although this state exercises little supervision over private schools, our courts are ill equipped to act as educational watchdogs. The plaintiffs' argument is unpersuasive to this court and is more appropriately made to the legislature.
The court, therefore, grants the defendant's motion to strike count four.[3]
Count Five
The fifth count of the complaint is directed against defendant Mead School for "tortious abuse." The defendants move to strike on the ground that no such cause of action exists in Connecticut or in any other state. CT Page 7444
The plaintiffs reallege paragraphs 1 through 18 of the first count and further allege that their children were sexually abused and harassed by fellow Mead students. They allege that Mead willfully and/or recklessly caused injury to their children by crearing and tolerating or perpetuating such an atmosphere, failed to notify the plaintiffs of the dangerous situation, and failed to correct it. The plaintiffs refer to specific incidents as alleged in count two, ¶ 19(d), which are as follows: an incident where Christopher was held down against his will; Christopher witnessing a fight between two students and witnessing an act of vandalism; Lara being punched and having chairs thrown at her, Lara having her sneakers cut up with a scissors while she was wearing them, repeated attempts by a male student to look up Lara's dress and Lara's hair being cut off without permission.
In their memorandum in opposition to the motion to strike, the plaintiffs assert that they have sufficiently alleged facts to support a cause of action for "tortious abuse" or assault and battery. The court is unaware of, and the plaintiffs do not cite any authority for recognizing a separate tort of "tortious abuse." The plaintiffs, therefore, must be attempting to state a cause of action for assault and battery.
"An assault has been defined as any attempt with force or violence to do corporal offense to another, coupled with the present apparent ability to complete the act. . . . A battery is a completed assault." (Citation omitted.) Singer v. Stammel, Superior Court, judicial district of Danbury, Docket Number 967530 (May 28, 1997, Grogins, J.). "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Altieri v. Colasso, 168 Conn. 329, 336 n. 3,362 A.2d 798 (1975). "An actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences; it may also be one committed negligently." Krause v. Bridgeport Hospital, 169 Conn. 1, 8,362 A.2d 802 (1975)
The plaintiffs do not allege that any agent or employee of the Mead School caused a harmful or offensive contact with CT Page 7445 Christopher or Lara Scaizi to occur. The contact alleged was caused by other Mead students. The court is unaware of, and the plaintiffs do not cite any, authority for imposing vicarious liability upon a school for the intentional torts of its students. To do so would turn every schoolyard squabble into a court proceeding.
The court notes that the plaintiffs in Bell v. West HavenBoard of Education Superior Court, judicial district of New Haven at New Haven, Docket Number 399597 (December 29, 1997, Hartmere, J.) made similar allegations to those made in the present case. In Bell, the plaintiffs alleged that the defendant school board "encouraged, created, and tolerated an atmosphere of chaos, disruptiveness and violence . . . their children were exposed to said physical and verbal violence on a daily basis; and that school became a place of fear where learning could not and did not take place." Id. The court found these allegations insufficient to support a cause of action for either educational malpractice or intentional infliction of emotional distress.
The court finds, viewing the allegations of the fifth count in the light most favorable to the plaintiffs, that the plaintiffs fail to state a cause of action for assault and battery or "tortious abuse". The defendants' motion to strike count five is granted.
Count Six
Count six is directed against the Mead School for unjust enrichment. The plaintiffs reallege paragraphs 1 through 19 of the second count (willful and fraudulent misrepresentation) and further that Mead has been unjustly enriched by the receipt of tuition monies from the plaintiffs, to the plaintiffs' detriment. The defendants move to strike on the ground that it is precluded by the reasoning of cases rejecting a cause of action for negligence arising from educational services.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. 5 S. Wihiston, Contracts (Rev. Ed.) § 1479. A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another . . . With CT Page 7446 no other test than what, under a given set of circumstances, is just or unjust, equitable or inequitable, conscionable or unconscionable, it becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply this standard. . . . Unjust enrichment is consistent with the principles of equity, a broad and flexible remedy . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefit[t]ed, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citations omitted; internal quotation marks omitted.) Hartford Whaler's Hockey Club v.Uniroyal Goodrich Tire Co., 231 Conn. 276, 282-83, 649 A.2d 518
(1994)
The plaintiffs argue that they have sufficiently pleaded the requisite elements for a claim of unjust enrichment and that that is the only inquiry for the court on a motion to strike. The plaintiffs oversimplify the court's task in ruling on a motion to strike. The court must determine whether the facts provable in the complaint would support a cause of action. Peter Michael,Inc. v. Sea Shell Associates, supra, 244 Conn. 270-71. This determination requires the court to consider whether a cause of action is recognized in this state under the facts alleged, not simply to compare the complaint with a checklist of elements looking for certain magic words. A motion to strike "may [also] be used to test whether Connecticut is ready to recognize some newly emerging ground of liability." (Internal quotation marks omitted.) Burns v. Hanson, Superior Court, judicial district of at Docket No. 9472342 (March 8, 1995, Stanley, J.) Just as it is not necessary for a plaintiff to use talismanic words to make out a cause of action, it is possible to use talismanic words and still not allege facts sufficient to support a cause of action, such as where policy considerations do not allow recognition of such an action based on the facts alleged. This case presents such a situation.
In count six, the plaintiffs essentially allege that defendant Mead received the benefit of the tuition the plaintiffs paid; the defendant unjustly did not provide the promised educational services to the plaintiffs' son or daughter and the failure of the defendant in providing said services was to the plaintiffs' detriment.
As the Supreme Court stated in Hartford Whaler's Hockey ClubCT Page 7447v. Uniroyal Goodrich Tire Co., supra, 231 Conn. 282-83, a right of recovery for unjust enrichment is based on it being unjust, inequitable, or unconscionable for the defendant to retain the benefit conferred. In the present case, this type of determination involves the type of inquiry the court found impermissible in Gupta v. New Britain Hospital, sucra,239 Conn. 574, in limiting breach of contract actions for educational services to two narrow situations, and rejecting an action for educational malpractice. In Gupta, the court rejected a cause of action based upon claims that focus on the reasonableness of conduct by schools in providing educational services to I students. Id., 590. Inquiry into whether the defendant was unjustly enriched by receipt of the plaintiffs' tuition payments requires an examination of the quality and value of services provided in return. Under the reasoning of the Supreme Court inGupta, actions that necessitate such an inquiry cannot be maintained whether they are brought as negligence, breach of contract or, as here, unjust enrichment claims. The plaintiffs cannot disguise their impermissible claims sounding in negligence and breach of contract as an unjust enrichment claim.
The plaintiffs assert that it would be dangerous to readGupta v. New Britain Hospital, supra, 239 Conn. 574, as immunizing private schools from liability for unjust enrichment. This court finds that striking this count prevents the plaintiffs from maintaining a claim that is impermissible under Gupta. The defendants' motion to strike count six is granted.
Count Seven
The seventh count is directed against the Mead School for misappropriation and usurpation of parental rights and authority. The defendants move to strike on the ground that there is no such cause of action in this state.
The plaintiffs reallege paragraphs 1 through 18 of count one and further allege that the Mead School, without the plaintiffs' permission, inculcated Christopher and Lara in a philosophy "centered on occult, New Age, paganistic dogma and ideals." ¶ 20. They allege that Mead celebrated the solstices and Halloween, but not Passover, Christmas, or Ramadan; that teachers read the book, "More Scary Stories" to Lara when she was three years younger than the suggested age for that book; that Christopher was forced to participate in a mock witch trial as part of his social studies class and that he attended a presentation by CT Page 7448 practitioners of the Wicca religion; and that Mead attempted to teach intuition as an academic discipline. 6 21. The plaintiffs assert that these actions constitute a misappropriation and usurpation of their exclusive parental rights and authority to make decisions regarding the health, education and welfare of their minor children.
The plaintiffs do not cite any Connecticut caselaw supporting such a cause of action. Instead they rely on two United States Supreme Court decisions Meyer v. Nebraska, 262 U.S. 390,43 S.Ct. 625 (1923), and Stanley v. Illinois, 405 U.S. 645,92 S.Ct. 1208 (1972). In Meyer, the court held that the state's ability to interfere in the parent-child relationship is limited by thefourteenth amendment to the United States Constitution. Meyer v.Nebraska, supra, 262 U.S. 399 400. In Stanley, a case involving the termination of parental rights, the court again noted the importance of the right to raise one's children. Stanley v.Illinois, supra, 405 U.S. 651. The cases cited by the plaintiffs prescribe limits that the United States Constitution places on a state's ability to interfere with the parent child relationship. These limits have been cited in Connecticut cases involving the termination of parental rights. See, e.g., In re Brianna F.,50 Conn. App. 805. 814, 719 A.2d 478 (1998). The present case, however, involves private individuals, not state actors. The plaintiffs contend that private actors are similarly precluded from interfering with a Connecticut parent's fundamental right, and obligation under General Statutes § 10-184, to educate his child.
General Statutes § 10-184, compels parents to educate their children from ages seven through sixteen. This statute does not require that children be educated in public schools. Parents, therefore, may choose to have their children educated in private schools. The plaintiffs in the present case chose to send Christopher and Lara to private school, i.e., Mead School, in satisfaction of their statutory obligation.
A fair reading of the plaintiffs' allegations is that that they disapproved of policies and programs at the Mead School, and that by having Christopher and Lara attend and/or participate in activities that they find objectionable, Mead supplanted them as exclusive decisionmakers for their children. There are no allegations, however, that the defendant interfered with the custody of Christopher and/or Lara or prevented the plaintiffs from withdrawing their children from the Mead School at any time. CT Page 7449
This court fails to see how, under the facts alleged, the cases or statute cited would provide the foundation for recognizing the cause of action advanced by the plaintiffs. This court finds no authority for recognizing a cause of action for misappropriation and usurpation of parental rights and authority in this state.
Accordingly, the court finds that count seven does not allege a cause of action and grants the defendant's motion to strike.
Count Eight
The eighth count is directed against defendant Norman Baron, Director of the Mead School, for intentional infliction of emotional distress. The defendant moves to strike on the ground that the conduct alleged is insufficient to support such a cause of action.
"In order for the plaintiff to prevail in a case for liability . . . [for intentional infliction of emotional distress], four elements must be established. It must be shown: I (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. . . . Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. . . . Thus, [i]t is the intent to cause injury that is the gravamen of the tort." (Citations omitted; internal quotation marks omitted.)DeLaurentis v. New Haven, 220 Conn. 225, 266-67, 597 A.2d 807
(1991). "The Restatement puts it as follows: Liability has been: found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim,` Outrageous!'" (Internal quotation marks omitted.)Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 20, 597 A.2d 846
(1991) (Berdon, J.) CT Page 7450
"The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation I with the other, which gives him actual or apparent authority over the other, or power to affect his interests." Mellaly v. EastmanKodak Co., 42 Conn. Sup. supra, 20. "Whether the defendant's conduct and the plaintiff's resulting distress are sufficient to satisfy either of these elements is a question, in the first instance, for [the] court. Only where reasonable minds can differ does it become an issue for the jury." Id., 18.
In the present case, the conduct alleged by the plaintiffs is that defendant Baron, "with full knowledge of Lara's sensitivity to such conduct, stared at Lara in such a manner as to deliberately harass, intimidate and terrorize her." Count 8, ¶ 22. rhe court finds that the conduct alleged is insufficient to satisfy the "extreme and outrageous" requirement. The allegation that Baron, the school director, stared at Lara, a student at the school, is not, alone, sufficient to constitute extreme and outrageous conduct. "For the tort of intentional infliction of emotional distress to be established . . . the plaintiff must allege and prove conduct considerably more egregious than that experienced in the rough and tumble of everyday life . . . .Whelan v. Whelan, 41 Conn. Sup. 519, 588 A.2d 251 (1991). A single incident of staring, as alleged in this case, does not exceed "all bounds usually tolerated by a decent society," nor would it lead an average member of the community to exclaim, `outrageous' A single stare by a school director at a student is part of the "rough and tumble" of everyday school life.
The facts as alleged are legally insufficient to maintain a cause of action for intentional infliction of emotional distress. The defendants' motion to strike count eight is granted.
Count Nine
The ninth count of the plaintiffs' complaint is directed against defendant Mead School for intentional infliction of emotional distress. The plaintiffs assert that defendant Baron was acting within the scope of his employment with the Mead School and in furtherance of its business and, therefore, vicariously liable for his "tortious conduct." The defendants move to strike on the ground that the conduct alleged is not sufficient to support such a cause of action. The court agrees. Defendant Baron's alleged conduct is insufficient to satisfy the CT Page 7451 requirement that it be extreme and outrageous. For the reasons set forth by the court in striking count eight, the motion to strike count nine is granted.
Prayer for relief
The plaintiffs' prayer for relief includes "prejudgment interest on all counts." The defendants moves to strike on the ground that the damages sought here are not liquidated sums subject to prejudgment interest.
A motion to strike is the proper method for attacking the legal sufficiency of any prayer for relief in a complaint. Practice Book § 10-39. A motion to strike will be granted if the relief sought cannot legally be awarded to the plaintiffs.Kavarco v. T.J.E., Inc., 2 Conn. App. 294, 298, 478 A.2d 257
(1984)
The plaintiffs argue that the tuition money paid to the defendant is a liquidated sum and, therefore, prejudgment interest pursuant to General Statutes § 37-3a is applicable.[4]
General Statutes § 37-3a provides in relevant part: "interest may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." "Section 37 3a provides a substantive right that applies only to certain claims. . . . It does not allow prejudgment interest on claims that are not yet payable . . . or on claims that do not involve the wrongful detention of money . . . . (Citations omitted.)Foley v. Huntington Co., 42 Conn. App. 712, 739, 682 A.2d 1026
(1996). "`Under § 37-3a, an allowance of prejudgment interest turns on whether the detention of the money is or is not wrongful under the circumstances.'" Id.; See also Cecio Bros., Inc. v, Feldmann,161 Conn. 265, 287 A.2d 374 (1972) Prejudgment interest under General Statutes § 37-3a is applicable to "breach of contract claims for liquidated damages, namely, where a party claims that a specified sum under the terms of a contract, or a sum to be determined by the terms of the concract, owed to that party has been detained by another party." Foley v. Huntington Co., supra,42 Conn. App. 740. "[I]nterest awarded under the statute is intended to compensate the prevailing party for a delay in obtaining money that rightfully belongs to him." (Internal quotation marks omitted.) Id., 740 n.h.
The plaintiffs allege that they entered into enrollment contracts with the Mead School and that they paid tuition in CT Page 7452 order for their children to attend. There are no allegations that the Mead School detained money that was due and payable to the plaintiffs. There are no allegations that Mead owed the plaintiffs a specified sum under a contract or a sum determinable from the terms of a contract. Furthermore, the court is granting the defendants motion to strike the plaintiffs' claims for breach of contract (count four) and unjust enrichment (count six) based on the impermissible inquiry: that these claims would require. The claims which remain after the court's decision on this motion to strike, i.e., fraudulent misrepresentation and CUTPA, are not claims whereby the plaintiffs "seek to regain money detained by another." Foley v. Huntington Co., supra, 42 Conn. App. 742. Because the remaining claims do not involve the wrongful detention of money, the court finds that General Statutes § 37-3a
is inapplicable. The defendants' motion to strike the plaintiffs' prayer for prejudgment interest, therefore, is granted.
SO ORDERED.
BY THE COURT,
TIERNEY JUDGE OF THE SUPERIOR COURT