HELEN F. KRAUSE ET AL., EXECUTRICES (ESTATE OF
STELLA BASKO) *v.* BRIDGEPORT HOSPITAL

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued April 1—decision released June 24, 1975

*Helen F. Krause,* for the appellants (plaintiffs).
*Arnold J. Bai,* with whom, on the brief, was *Keith D. Dunnigan,* for the appellee (defendant).

MacDonald, J. The plaintiffs, as executrices of the estate of Stella Basko, brought an action against the defendant, Bridgeport Hospital, claiming, in the first count, damages for the death of their decedent alleged to have been caused by the negligence of three employees of the defendant specifically named in the complaint; and, in the second count, damages for assault and battery alleged to have been committed on the plaintiffs' decedent by the same three employees of the defendant. Upon the close of the plaintiffs' case and without offering evidence, the defendant moved for a directed verdict. This motion was granted and the plaintiffs' motion to set aside the defendant's verdict returned

by the jury by direction of the court was subsequently denied. The plaintiffs have appealed from the judgment rendered, assigning as error the court's refusal to set aside the verdict.

The correctness of the court's ruling is tested on the basis of the evidence printed in the appendices to the briefs. *Fleming* v. *Becker,* 162 Conn. 563, 565, 295 A.2d 524; *Smith* v. *Housing Authority,* 144 Conn. 13, 14, 127 A.2d 45. The court's action in directing the verdict for the defendant can be sustained only if the jury could not reasonably and legally have reached a conclusion other than in the defendant's favor. *Pinto* v. *Spigner,* 163 Conn. 191, 192, 302 A.2d 266; *Santor* v. *Balnis,* 151 Conn. 434, 435, 199 A.2d 2. Directed verdicts are not favored and should be granted only when the jury could not reasonably and legally reach any other conclusion. *Pinto* v. *Spigner,* supra; *Leary* v. *Johnson,* 159 Conn. 101, 104, 267 A.2d 658.

In reviewing the evidence printed in the appendices to the briefs to test the correctness of the trial court's ruling on a motion to set aside the verdict, we have generally adhered to the rule that such evidence "must be given the most favorable construction in support of the verdict of which it is reasonably capable." *Fleming* v. *Becker,* supra, 565; *Petrillo* v. *Bess,* 149 Conn. 166, 167, 179 A.2d 600. However, where the issue framed by an appeal from a final judgment upon a ruling refusing to set aside a verdict raises, as here, the correctness of the trial court's action in directing a verdict in the first place, we have diverted from that general rule of construction and have employed a standard for review of the printed evidence as enunciated in *Pinto* v. *Spigner,* supra, 193: "In reviewing the

action of the trial court, in first directing and there-
after refusing to set aside the verdict, we consider
the evidence, including inferences which reasonably
may be drawn from this evidence, in the light most
favorable to the plaintiff." Even viewed in this
light, however, the evidence fails to support the alle-
gations of negligence and assault and battery
framed by the plaintiffs' complaint.

During the trial the defendant stipulated that
the three x-ray technicians named in the complaint
were employees of the defendant acting in the
course of their employment in pursuance of their
duties in the x-ray room.[1] The plaintiffs called as
a witness Mildred Clark, daughter of the decedent
and coexecutrix of the decedent's estate, who testi-
fied that on March 4, 1968, the decedent entered
Bridgeport Hospital for examination and treatment
of abdominal pains; that on March 5, 1968, she was
taken to the x-ray room for a barium enema and
x-rays of the abdomen; and that on March 5, 1968,
at about 5 p.m., the decedent complained to her
daughter that "they broke my arm in the x-ray
room, there they yanked my arm and I screamed,
I told them they broke my arm and they chuckled
a little and that was it." Mildred Clark further
testified that on March 5, 1968, she called the head
nurse and told her they had broken her mother's
arm and that her mother was sitting that way all
day and nobody seemed to believe her. "They"
referred to in this testimony were never further

---

[1] The attorney for the defendant hospital stipulated as follows
in open court: "Before the jury comes in, if Your Honor please, we
are able to stipulate and agree in this case that Susan Christianson,
Valerie Attianese and Mary Olah were at all times mentioned in the
complaint employees of the defendant, Bridgeport Hospital, and in
pursuance of their duties, in the x-ray room they were acting in the
course of their duties with the hospital."

identified in any testimony or exhibit. Later on the same day a resident doctor examined the decedent and discovered a dislocation of the decedent's left shoulder. On March 6, 1968, the decedent was required to undergo surgery under general anesthesia in order to reduce the dislocation.

Dr. Robert P. Ragusa, the decedent's attending physician, testified that the decedent was admitted for evaluation of rather vague complaints of back pain and abdominal distress and that he was not aware of any ulcer condition at the time she was admitted; that he ordered some studies, including a barium enema and x-rays of the intestine; that the "G.I. series" was not performed because the decedent during the barium enema had received an injury to her shoulder which required surgical treatment by Dr. John Moore, and this prevented the further tests from being made on the decedent; that because of the surgery to the shoulder, further studies of her abdominal pains were suspended and that then, after surgery, the decedent developed a cardiac problem; that he conducted no further tests because this would have required her to get up from her bed and be brought to the x-ray department, which he did not feel was wise at the time.

Dr. Ragusa further testified that the first time he learned of the ulcer condition was from the autopsy performed after the death of the decedent, which indicated that she had died from peritonitis secondary to a perforation or rupture of a duodenal ulcer; that he probably would have been able to diagnose the abdominal trouble of the decedent if he had been able to complete the tests he had ordered on her admission; that he would have been able to give her specific treatment and, with reason-

able medical probability, it would have been successful; that he never gave the decedent the specific treatment for a perforated ulcer; that he engaged a surgical consultant, Dr. Thomas H. Connell, Jr., and that they both agreed that although something was wrong within her abdomen the decedent was in no condition to undergo surgery. He further testified that had there not been the shoulder dislocation, from his knowledge of Mrs. Basko and her condition, he would have been able to proceed with the usual tests.

The plaintiffs' evidence completely failed to identify any specific person or persons involved in the dislocation of the decedent's shoulder, let alone any specific act of negligence on the part of any person. The defendant had merely stipulated to the agency of the three technicians named in the complaint but did not admit or stipulate even as to their presence, or the presence of any one of them, in the x-ray room at the time the dislocation occurred.

Moreover, no evidence whatsoever was offered as to the standard of care that should have been employed by the attendants in the x-ray room or whether that standard was breached by those individuals. Such evidence as was offered by the plaintiffs did, however, make it clear that at all times mentioned in the complaint the decedent was under medical care and receiving medical treatment. "In the ordinary action for negligence the jury can apply, unaided by experts, the standard of care of the reasonably prudent person under the circumstances. This does not apply, however, to an action for malpractice. Since the members of the jury are laymen, they cannot be expected to know the requirements for proper medical treatment in the

usual case. Under our rule, the plaintiff cannot prevail in such cases unless there was positive evidence of an expert nature from which the jury could reasonably and logically conclude that the defendant was negligent." *Levett* v. *Etkind,* 158 Conn. 567, 573–74, 265 A.2d 70. The statement of the plaintiffs' decedent that "they yanked my arm and I screamed" is the only evidence concerning the conduct of those persons who were in the x-ray room. The manipulation required for the proper positioning for a barium enema of the decedent, described as an elderly woman, "very tense, obese, with marked dorsum rotundum," and with many complaints and a somewhat complicated medical history, certainly was of such a highly technical nature as to be beyond the field of ordinary knowledge and experience of judges or jurors. It has been held that x-ray procedures involve medical treatment and that expert medical evidence is required to establish the standard of care involved. *Bennett* v. *Los Angeles Tumor Institute,* 102 Cal. App. 2d 293, 227 P.2d 473. Having failed to establish not only the act which caused the decedent's injury but also who performed it as well as the standard of care required for the procedures involved, the plaintiffs failed to remove these basic issues from the realm of surmise, guess, conjecture and speculation on the part of the jury. *Lombardi* v. *J. A. Bergren Dairy Farms, Inc.,* 153 Conn. 19, 25, 213 A.2d 449; *Gothreau* v. *New York, N.H. & H.R. Co.,* 148 Conn. 65, 67, 167 A.2d 244; *Chasse* v. *Albert,* 147 Conn. 680, 683, 166 A.2d 148. The plaintiffs having failed to prove even one of the allegations of negligence contained in their complaint, the trial court properly directed a verdict for the defendant on the first count.

The plaintiffs in their brief assert that the doctrine of res ipsa loquitur applied to the circumstances of this case "because in any proper positioning of the patient on the x-ray table there wouldn't occur any dislocation of the shoulder." However, "the fact that an operation or treatment has resulted unfavorably does not, of itself, raise any presumption of want of proper care or skill." *Chubb* v. *Holmes*, 111 Conn. 482, 488, 150 A. 516. "The difficulty of the layman in comprehending the effect of medical treatment is the same whether the practitioner is licensed or unlicensed. The rule is, here as elsewhere, that no recovery may ordinarily be had in such cases unless expert testimony supporting the plaintiff's allegations of negligence somewhere appears. . . . There is no such testimony in this case. . . . The fact that the operation was followed by infection raised no presumption of want of proper care or skill. . . . The plaintiff is not entitled to rely on the doctrine of res ipsa loquitur." *Haliburton* v. *General Hospital Society*, 133 Conn. 61, 65, 48 A.2d 261.

As to the second count alleging an assault and battery, even assuming that the individuals present in the x-ray room had been identified as the technicians named in the complaint, no evidence was offered to suggest that their conduct fell within the definitions of an actionable assault or battery. We have defined an actionable assault to include the performance of an operation by a surgeon without the patient's consent. *Schmeltz* v. *Tracy*, 119 Conn. 492, 495–96, 177 A. 520. Further, an actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences; it may also be one com-

mitted negligently. *Alteiri* v. *Colasso,* 168 Conn. 329, 333, 362 A.2d 798; *Russo* v. *Porga,* 141 Conn. 706, 708–709, 109 A.2d 585. Arguably, an intentional or negligent extension of physical contact beyond that consented to or needed properly to position a patient on an x-ray table and which results in injury may present an actionable battery; however, the pleadings did not suggest this nor have the plaintiffs offered proof to support such a cause of action. The trial court did not err in directing a verdict for the defendant on this count.

The plaintiffs claim that the issue of proximate cause should have been submitted to the jury. The evidence as detailed previously suggests an attenuated causation situation but one that might be viewed as presenting a conflict to be resolved by the trier of fact. However, in an unfortunate "cart-before-the-horse" process of reasoning, the plaintiffs have failed to perceive the fundamental principle that tortious conduct must first be proved by a preponderance of the evidence before the issue of proximate cause may be considered. That an injury may be causally connected to a defendant's conduct will not afford a plaintiff the right to seek damages for that injury absent a finding that the defendant's conduct was tortious. The plaintiffs, having failed in their proof of any tortious conduct by the defendant or its agents, as previously noted, were not entitled to have the issue of proximate cause submitted to the jury.

The plaintiffs have raised on appeal in their brief a number of theories for recovery which were not alleged in their complaint and, accordingly, they were not entitled to have these issues considered

by the jury. *Buol Machine Co.* v. *Buckens,* 146 Conn. 639, 642, 153 A.2d 826; *Frosch* v. *Sears, Roebuck & Co.,* 124 Conn. 300, 303, 199 A. 646.

There is no error.

In this opinion House, C. J., Loiselle and Longo, Js., concurred.

Bogdanski, J. (dissenting). Litigants have a constitutional right to have issues of fact decided by a jury. Conn. Const., art. first, § 19, amend. IV; *Blados* v. *Blados,* 151 Conn. 391, 396, 198 A.2d 213. Directed verdicts are therefore disfavored and should only be granted when the jury could not reasonably and legally reach any other conclusion. *Pinto* v. *Spigner,* 163 Conn. 191, 193, 198, 302 A.2d 266; *Loukides* v. *United Illuminating Co.,* 160 Conn. 66, 68, 70, 273 A.2d 719. In testing a directed verdict for a defendant, the evidence, including legitimate and reasonable inferences arising from the evidence, must be considered in the light most favorable to the plaintiff. *Loukides* v. *United Illuminating Co.,* supra; *Engengro* v. *New Haven Gas Co.,* 152 Conn. 513, 516, 209 A.2d 174. "The preferred procedure . . . [is] for the trial court to submit the issues to the jury and consider the sufficiency of the evidence on a motion to set aside the verdict. *Santor* v. *Balnis,* 151 Conn. 434, 437, 199 A.2d 2." *Loukides* v. *United Illuminating Co.,* supra, 70.

The defendant's records, introduced as exhibits by the plaintiffs, reveal that the plaintiffs' decedent suffered a complete dislocation of her shoulder while being positioned for a barium enema in the x-ray room; that after that incident she complained of pain in her shoulder and arm; and that on different occasions she stated that a "nurse pulled . . . [her arm] in the x-ray room" and "they

twisted . . . [my] arm in x-ray." The decedent's daughter also testified that after the incident in the x-ray room, the deceased complained to her that "they broke my arm in the x-ray room [;] . . . they yanked my arm and I screamed [;] I told them they broke my arm and they chuckled a little and that was it." Furthermore, the parties stipulated that the individuals named in the complaint were "at all times mentioned in the complaint" the agents of the hospital acting in the course of their employment in the x-ray room.

Any ambiguity on the question of exactly who dislocated the decedent's shoulder is academic, since this action is only against the defendant hospital as employer of the persons responsible. The decedent's declarations that a "nurse" pulled her arm in the x-ray room and that "they" broke or twisted her arm in the x-ray room, combined with the stipulation that the individuals named in the complaint were "at all times mentioned in the complaint" agents of the hospital, would permit a strong inference that employees of the hospital were responsible for dislocating the decedent's shoulder. Any ambiguity on that point must be resolved in favor of the plaintiffs.

The declaration that "they yanked my arm" could reasonably be considered by the jury as a negligent breach of duty which the hospital's employees owed to the decedent. Moreover, the "yanking" could also be considered by the jury as an assault and battery done under circumstances showing a reckless disregard of the consequences or a lack of exercise of due care. See *Russo* v. *Porga,* 141 Conn. 706, 708, 109 A.2d 585; *Lentine* v. *McAvoy,* 105 Conn. 528, 531, 136 A. 76.

With regard to the standard of care, it would have been preferable for the plaintiffs to produce expert medical testimony since certain technical procedures involved in the administration of a barium enema may not be within the comprehension of laymen. Under the facts of this case, however, expert evidence should not be strictly required, since the injury to the decedent's shoulder was far removed from that part of the body involved in the administration of the enema. Our cases recognize that expert medical testimony is not required where there is such a gross want of care and skill as to afford an almost conclusive inference of negligence; *Levett* v. *Etkind*, 158 Conn. 567, 574, 265 A.2d 70; *Slimak* v. *Foster*, 106 Conn. 366, 370, 138 A. 153; and numerous jurisdictions have held that expert evidence is not required to make out a case against a hospital for the injury or death of a patient where the negligence involved is such as to be within the comprehension of laymen, requiring only common knowledge and experience to understand and judge it. Annot., 40 A.L.R.3d 515, 523, § 4, and cases cited therein. Of note is *Davis* v. *Memorial Hospital*, 58 Cal. 2d 815, 817, 376 P.2d 561, wherein it was held that it was common knowledge of laymen that the giving of an enema was not ordinarily harmful and that the "tearing" of the rectum by a nurse inserting a rubber tube could be considered as a negligent act without the testimony of an expert. A fortiori, the dislocation of a shoulder should not require expert evidence on the standard of care for administering a barium enema.

I would therefore find error in the granting of the motion for a directed verdict, set aside the judgment and remand the case for a new trial.