[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case stems from an unfortunate incident between two former friends, plaintiff Derrick Comrie and defendant Keith Hinds, Sr.
In his amended complaint dated April 3, 1996, Mr. Comrie alleges in the First Count that on May 2, 1991, Mr. Hinds willfully assaulted him with a large metal pole, striking him in the head and right eye, resulting in damage to his eye and a permanent, disfiguring scarring. In the Second Count, plaintiff alleges negligence. In the Third Count, he alleges recklessness. Plaintiff seeks money damages and punitive damages.
Trial was held on April 3, 1996. Three witnesses testified: plaintiff; defendant; and defendant's wife. Not surprisingly, plaintiff's version of what occurred differed significantly from the accounts provided by defendant and his wife.
For the reasons stated below, I have concluded that plaintiff has failed to bear his burden of proof on the First Count and the Third Count, but has proven that defendant's negligence caused his injury as alleged in the Second Count.
DISCUSSION OF EVIDENCE — LIABILITY
Mr. Comrie, now 44 years old, testified that he had met Mr. Hinds at a junkyard when they were both looking for car CT Page 3593 parts. They became friends and had no history of arguing or fighting.
At some point, defendant stored a large car part or parts in the garage of one of plaintiff's friends. Plaintiff's friend decided she wanted the car part removed. Plaintiff took it upon himself to ask defendant repeatedly to remove the car part.
On May 2, 1991, plaintiff went to defendant's sign printing business at 747 Blue Hills Avenue in Bloomfield to urge again that defendant remove the car part. The testimony differs as to what then occurred.
Mr. Comrie testified that when he arrived at 747 Blue Hills Avenue, he saw Joan Hinds, defendant's wife, and asked where Mr. Hinds could be found. Plaintiff testified that he was calm and was not loud or angry when he first approached Mrs. Hinds. Plaintiff testified that he was directed to defendant, who was inside the building where his business was located, and that he approached. Plaintiff testified that while still outside the building he saw defendant inside and approached the door, calmly asking defendant when he was going to move the disputed car part.
According to plaintiff, without any provocation whatever and without any harsh words having been uttered, defendant picked up a sign pole he was working on, uttered a profanity, and jabbed him with it, striking him over his right eye, resulting in injury and a scar. Plaintiff was taken to Mt. Sinai Hospital where he was treated. He testified as to $2,727.43 in medical and prescription bills, which are not in dispute.
Joan Hinds, defendant's wife of 30 years, painted a different picture of the day's events and a less placid view of plaintiff. Mrs. Hinds testified that she had known plaintiff through her husband for "quite a while." She testified that she knew plaintiff had wanted her husband to move the car part.
On May 2, 1991, she recalled plaintiff arriving and using profanity, demanding to know when defendant was going to get rid of the car part. She testified that she observed the plaintiff walk into the building and, bellicose and uttering CT Page 3594 profanities, angrily ask defendant when he was going to remove the car part. She said her husband was sitting in a high chair, framing a 4' x 8' sign when plaintiff arrived and that her husband did not pick up the sign pole when plaintiff arrived. She said plaintiff angrily walked into the sign, inside the building, resulting in injury.
Keith Hinds, Sr. testified that he had first met plaintiff at the junkyard approximately one year before the May 1991 incident. He testified that he had obtained the permission of the garage owner to store the car part and that while plaintiff had asked him to remove the car part three to four times, the garage owner herself had never asked him to do so.
On May 2, 1991, defendant testified that he was working on a sign in the front of his shop where he heard someone speaking in a belligerent voice, swearing. His wife came into the building and told him plaintiff was there and was angry.
Defendant testified that he saw plaintiff come inside the door and that he tried to calm him, pointing out what a beautiful morning it was. Mr. Hinds testified that plaintiff gestured aggressively and demanded that he remove the car part. He further testified that he became scared, fearing plaintiff could have a weapon. There is no evidence in the record that a weapon was in fact used or threatened to be used.
According to defendant, he lifted up the sign he was working on as a "buffer" to protect himself and shield himself from plaintiff's aggressive advance.
Plaintiff walked into the sign, defendant asserted, which defendant described as a 4' x 8' metal sign, with a large piece of metal protruding on the top. Mr. Hinds denied emphatically that he poked plaintiff with the sign, used it aggressively, or intended to use it as a weapon, describing the occurrence as a "freak accident." If his goal had been to harm plaintiff, defendant insisted, he would not have struck him only once.
Defendant gave a statement to the police, was charged with assault in the first degree, and pleaded guilty to assault in the third degree. Over objection, see Flynn v.CT Page 3595Raccuia, 146 Conn. 210, 213, 148 A.2d 763 (1959), he testified that he had pleaded guilty because he did not have the money to defend the case.
LEGAL DISCUSSION
Plaintiff of course bears the burden of persuasion by a preponderance of the evidence as to all of his allegations.
Count One alleges that defendant "willfully assaulted" plaintiff. Assault "has been defined as any attempt with force or violence to do corporeal offense to another, coupled with the present apparent ability to complete the act."[1] D. Wright, J. FitzGerald W. Ankerman, Connecticut Law of Torts (3d Ed. 1991) c. 2, § 6, p. 8. An assault "cannot be accomplished by words alone. There must be an overt act evidencing some corporeal threat. A mere preparation for an assault is not a civil wrong." Id., § 8, p. 9. To be held liable for assault, "the defendant must have intended to interfere with the plaintiff's personal integrity — which is to say that he must have intended to bring about an assault, a battery, or an imprisonment . . . But the intent need not necessarily be to inflict physical injury, and it is enough that there is an intent to arouse apprehension." W. Prosser, Torts (4th Ed. 1971) c. 2, § 10, pp. 40-41. See also 6 Am.Jur.2d, Assault and Battery § 110 (1963). As Judge Wright notes in his text, Connecticut civil cases on the subject of assault — contradistinguished from those constant companions, assault and battery — are rare. D. Wright, J. FitzGerald 
W. Ankerman, supra, § 6, p. 8. See Gullotta v. Ostrout,
Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 0508588 (March 11, 1994, Hennessey, J). See also Krause v. Bridgeport Hospital, 169 Conn. 1,362 A.2d 802 (1975). As Judge Wright also notes, in civil assault cases, questions to be answered are whether the victim was placed in apprehension or fear, and whether a defendant had a present apparent ability to complete the offense which impinged upon the plaintiff's consciousness. D. Wright, J. FitzGerald W. Ankerman, supra, § 7, p. 9.
Count Two alleges that defendant acted negligently in four specified ways, including in that "he positioned the pole or bar in such a fashion that it came into contact with the plaintiff." To prove negligence, plaintiff must show that defendant breached a duty owed to him, causing injury. UrbanCT Page 3596v. Hartford Gas Company, 139 Conn. 301, 304, 93 A.2d 292
(1952); W. Prosser, supra, § 30.
Count Three alleges that the injury was caused by defendant's "reckless and wanton conduct" in four specified ways. Our Supreme Court has stated that: "Wanton misconduct is more than negligence, more than gross negligence. It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of action."Menzie v. Kalmonowitz, 107 Conn. 197, 199, 139 A. 698 (1928). See also Bordonaro v. Senk, 109 Conn. 428-32, 147 A. 136
(1929).
Having considered the demeanor of the witnesses and evaluated their credibility in light of all of the evidence, I have concluded that plaintiff has proven that defendant acted negligently, but has failed to prove that he committed an assault or acted recklessly. I have also concluded that while plaintiff's testimony deserves to be credited in many respects, it does not deserve to be accepted in others. Specifically, it is hard to credit plaintiff's contention that he was as calm and unperturbed as he says he was when he appeared at defendant's place of business. He went there specifically to seek redress of a grievance. Some degree of agitation was to be expected. Moreover, it simply does not comport with logic and common sense to believe that defendant, entirely unprovoked and not fearing for himself, took the action he did. Plaintiff in all likelihood confronted defendant with considerably less equanimity that he admits. Consequently, I find that plaintiff has failed to prove by a preponderance of the evidence that defendant engaged in an act evidencing a corporeal threat, or attempted or intended to injure plaintiff.
I also conclude that in all probability the incident occurred inside defendant's building based on my evaluation of all of the evidence and that defendant was acting in the not unreasonable belief that he could be subjected to harm in his business, justifying concern on his part. Cf. Hanauer v.Coscia, 157 Conn. 49, 54, 244 A.2d 611 (1968). The evidence, testimony, and reasonable inferences lead me to accept defendant's testimony that he intended to use the sign defensively as a shield or protective barrier, not aggressively as a weapon. Plaintiff's claim of recklessness is therefore rejected as well. CT Page 3597
However, defendant still had a duty to exercise reasonable care toward plaintiff, a duty in which he failed. Cf. Russo v. Proga, 141 Conn. 706, 708, 109 A.2d 585 (1954). While the somewhat unusual facts of this case may have justified his use of the sign as a protective barrier, defendant still had a duty to utilize the sign in such a manner as avoid harming plaintiff. This is so because of the size, shape, apparent sharpness and configuration of the metal sign which caused significant injury to plaintiff. The evidence indicates that plaintiff proved by a preponderance of the evidence that defendant breached a duty to plaintiff by negligently manipulating the sign, causing injury to plaintiff, as alleged in Count Two, paragraph 4(e).
DAMAGES
I have reviewed the medical reports submitted into evidence. I also viewed plaintiff's eye and scar during the trial.
An award of damages should be "fair, just and reasonable" under all the circumstances. The eyelid is puffy, and the scar is clearly visible. The exhibits indicate that the injury has had some adverse impact on plaintiff's vision. have concluded that fair, just and reasonable damages in this case are as follows: (1) $2,700 for out-of-pocket medical expenses; (2) $7,500 for pain and suffering; (3) $10,000 for the scar and damage to plaintiff's eye and eyelid; (4) $2,000 for impairment of vision; for a total of $22,200.
Douglas S. Lavine Judge, Superior Court