[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (#125) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The plaintiff, Larry Daigneault, filed a revised complaint dated July 6, 1999 in this action in seven counts against the following defendants: Consolidated Controls Corporation/Eaton Corporation (Eaton), his former employer; Richard Recht, Eaton's human resource manager; Richard Delisle, the plaintiff's former supervisor; and Robert Rustigan, a former co-worker.
Count one of the plaintiff's seven count complaint alleged wrongful discharge by Eaton. That claim was dismissed by the court on July 25, 2000.
In his revised complaint, the plaintiff asserts claims against Eaton for breach of contract (count two) and violation of General Statutes § 31-51q (count three).
He asserts a claim against Eaton and Delisle for assault and battery (count four).
He asserts claims for intentional and negligent infliction of emotional distress against Recht, Rustigan and Delisle (count five and count six). CT Page 7631
Finally, he asserts a claim of interference against Delisle (count seven).
The plaintiff alleges the following facts. In March, 1983, the plaintiff was hired by Eaton Corporation, to work as a tester/inspector of pressure switches used in airplanes and ships. In 1990, a new repair department was created and the plaintiff began working under Delisle's supervision. During Delisle's tenure as supervisor, the plaintiff alleges that Delisle used bullying tactics against him such as massaging his shoulders, giving him bear hugs and denying him the opportunity to work overtime. Also during this time, the plaintiff alleges that Delisle and other Eaton employees disregarded safety and repair procedures, including prematurely signing units back into service and issuing a thirty day turnaround time in which to get parts sent in for repair back to the customer. The plaintiff voiced his concerns about these issues repeatedly to Delisle, but the practices continued.
The plaintiff alleges that because he continued to voice his concerns over these practices, the defendants subjected him to disciplinary actions based on violations of rules, and that these rules were applied differently to the plaintiff than to any other employee. Specifically, the plaintiff was suspended for three days in April 1997, for telling his friends at the company that he was going to call the FBI regarding the safety and ethical violations; he was again suspended for three days in July 1997, for violating the company policy on wearing hats, and in March 1998, for taking a two-hour lunch break. Also in March 1998, the plaintiff was placed on immediate administrative leave pending a final meeting on his status after he spoke with a co-worker about a sexual conversation the plaintiff had on the internet with a seventeen year old girl.
On April 3, 1998, Eaton terminated the plaintiff's employment.
On August 31, 2001, the defendants filed a motion for summary judgment as to each of the six remaining counts of the plaintiff's revised complaint.
"Practice Book [§ 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles CT Page 7632 of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Rivera v. Double A Transportation, Inc., 248 Conn. 21, 24,727 A.2d 204 (1999).
COUNT TWO — BREACH OF CONTRACT
Count two of the plaintiff's complaint alleges a cause of action against Eaton for breach of express and implied contract. Eaton argues that the motion for summary judgment should be granted as to this count because the plaintiff cannot establish the existence of any type of contract between the plaintiff and Eaton. They contend that Eaton's employee manual has an at-will disclaimer that provides that all employees are employed at-will, and that any other directive that an employee receives during employment does not create a contractual obligation between Eaton and that employee.
In opposition, the plaintiff argues that there is a genuine issue of material fact as to whether a contract existed because Eaton's employee manual has a provision for a progressive discipline plan. The plaintiff claims that this plan undermines the intention of the at-will disclaimer set forth in the policy manual.
"It is firmly established that statements in an employer's personnel manual may . . . under appropriate circumstances . . . give rise to an express or implied contract between the employer and employee." (Internal quotation marks omitted.) Gaudio v. Griffin Health Services Corp.,249 Conn. 523, 532, 733 A.2d 197 (1999). "[The Supreme Court has] stated with unambiguous clarity, [however], that employers can protect themselves against employee contract claims based on statements made in personnel manuals by following either (or both) of two simple procedures: (1) eschewing language that could reasonably be construed as a basis for a contractual promise; and/or (2) including appropriate disclaimers of the intention to contract." (Internal quotation marks omitted.) Id., 535.
Moreover, "[o]n numerous occasions Superior Courts have held that contract claims based solely on the terms of an employee handbook must fail if the handbook has an effective disclaimer." Acevedo v. LedgecrestHealth Care, Superior Court, judicial district of New Britain, Docket No. 509027 (October 18, 2001, Shortall, J.); see also Schain v. BlueCross/Blue Shield of Connecticut, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 349216 (October 21, 1996, Zoarski,J.T.R.), aff'd, 47 Conn. App. 918, 703 A.2d 1192 (1997); Markgraf v.Hospitality Equity Investors, Inc., Superior Court, judicial district of CT Page 7633 Danbury, Docket No. 308501 (February 18, 1993, Fuller, J.) (8 C.S.C.R. 277);Grieco v. Hartford Courant Co., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 372593 (January 27, 1993, Aurigemma, J.) (8 C.S.C.R. 219); Wallace v. Gaylord Farm Assn., Superior Court, judicial district of New Haven at Meriden, Docket No. 233770 (August 11, 1992, Dorsey, J.) (7 Conn.L.Rptr. 155).
Eaton's employee manual contains a disclaimer and the evidence shows that the plaintiff received and signed the manual.[1] The court finds that Eaton's employee manual, with its explicit disclaimer, cannot be construed as a contract. Accordingly, the defendants' motion for summary judgment as to the breach of contract claim is granted.
COUNT THREE — VIOLATION OF GENERAL STATUTES SEC. 31-51q.
Count three of the plaintiff's complaint alleges a cause of action against Eaton for a violation of General Statutes § 31-51q.[2]
Eaton asserts that the motion for summary judgment should be granted because the plaintiff's statements regarding an internet conversation the plaintiff had with a 17 year-old girl relate to his own personal interests and are not matters of public concern. In opposition, the plaintiff contends that whether his statements regarding safety and ethical concerns at Eaton address a matter of public concern is a question of fact for the jury to decide.
"Section 31-51q protects from retaliatory discharge an employee who invokes constitutionally guaranteed free speech rights that, in turn, protect statements that address a matter of public concern." Daley v.Aetna Life Casualty Co., 249 Conn. 766, 776, 734 A.2d 112 (1999). "[W]hether the subject matter addressed by a particular statement is of public concern involves a question of law for the court. . . . [W]hether a particular statement addresses such a matter depends on its content, its form, and the context in which it is made. This later inquiry necessarily involves a question of fact." Id., 777.
Statements about safety matters affecting the general public have been determined to be matters of public concern. See Mirto v. LaidlawTransit, Inc., Superior Court, judicial district of New Haven, Docket No. 334231 (April 26, 1993, Stanley, J.) (9 Conn.L.Rptr. 19); Lowe v.Amerigas, Inc., 52 F. Sup.2d 349 (D. Conn. 1999), aff'd, 208 F.3d 203
(2d Cir. 2000). Whether the plaintiff's statements address safety matters, and are therefore, a matter of public concern, is a question of fact. Accordingly, the defendants' motion for summary judgment as to the claim of a violation of General Statutes § 31-51q is denied.
COUNT FOUR — ASSAULT AND BATTERY
CT Page 7634
Count four alleges a cause of action against Eaton and Delisle for assault and battery. Eaton and Delisle contend that the motion for summary judgment should be granted because the record contains no evidence that Delisle acted intentionally to cause a harmful contact to the plaintiff by massaging his shoulders and hugging him. Eaton and Delisle also claim that the plaintiff has submitted no evidence to show that he was in imminent apprehension of violence or suffered any harm when this conduct took place. In opposition, the plaintiff asserts that whether a person has been subjected to assault and battery is a question of fact for the jury.
"Assault has been defined as any attempt with force or violence to do corporeal offense to another, coupled with the present apparent ability to complete the act. . . . A battery is a completed assault." Scalzi v.The Mead School For Human Development, Superior Court, judicial district of Stamford, Docket No. 148213 (June 4, 1999, Tierney, J.) (24 Conn.L.Rptr. 662, 667). "An actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other . . . or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Alteiri v. Colasso,168 Conn. 329, 334 n. 3, 362 A.2d 798 (1975). "[A]n actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally, or one done under circumstances showing a reckless disregard of consequences; it may also be one committed negligently." Krause v. Bridgeport Hospital,169 Conn. 1, 8-9, 362 A.2d 802 (1975).
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . A specific intent to produce injury is . . . one that a jury should be permitted to consider. It is for the finder of fact, not the court on summary judgment, to determine what inferences to draw. . . ." Suarez v.Dickmont Plastics Corp., 229 Conn. 99, 111, 639 A.2d 507 (1994). Whether Delisle intended to cause a harmful or offensive contact with the plaintiff is a question of fact for the jury to decide. Accordingly, the defendants' motion for summary judgment as to the assault and battery claim is denied.
COUNT FIVE — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
Count Five of the plaintiff's complaint alleges a cause of action against Delisle, Rustigan and Recht for intentional infliction of emotional distress. Delisle, Rustigan and Recht claim that the motion for summary judgment should be granted because the record contains no CT Page 7635 evidence that their acts were extreme and outrageous or that the plaintiff suffered from emotional distress because of their conduct. In opposition, the plaintiff contends that the defendants' conduct was extreme and outrageous because they engaged in a systematic campaign of harassment and abuse against him in retaliation for raising concerns over safety and ethical issues at Eaton.
"In order for the plaintiff to prevail in a case for liability under . . . [intentional infliction of emotional distress], four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Appleton v. Board of Education,254 Conn. 205, 210, 757 A.2d 1059 (2000). "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine . . . Only where reasonable minds disagree does it become an issue for the jury." Id.
"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, `Outrageous!'. . . . Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." Id.
In several cases, the judges of the Superior Court have found that a defendant's conduct was not sufficiently egregious to sustain an action for intentional infliction of emotional distress. See Jeffress v. YaleUniversity, Superior Court, judicial district of New Haven at New Haven, Docket No. 386866 (August 28, 1997, Silbert, J.) (defendants subjected plaintiff to a continuous pattern of harassment, humiliation and degradation); Rosenberg v. Meriden Housing Authority, Superior Court, judicial district of New Haven at New Haven, Docket No. 377376 (October 29, 1999, Licari, J.) (defendant did not allow plaintiff to respond to allegations made about his conduct or confront other employees that had a problem with his conduct); Henderson v. Hoban, Superior Court, judicial district of New Haven at New Haven, Docket No. 391352 (July 10, 1998, CT Page 7636Levin, J.) (defendant shouted at plaintiff, threatened to strike her, verbally attacked her, threatened and abused her); Baricko v.Cheesebrough-Pond's USA Co., Superior Court, judicial district of New Haven at New Haven, Docket No. 395642 (December 26, 2000, Zoarski, J.) (supervisor actively attempted to eliminate plaintiff from employment, prevented plaintiff from using vacation time and played fellow employees against each other).
On the other hand, in those cases where the courts have found that the defendant's behavior was sufficiently extreme or outrageous to give rise to an intentional tort, the circumstances have been particularly egregious. See Brown v. Ellis, 40 Conn. Sup. 165, 165-68, 484 A.2d 944
(1984) (defendant demanded that plaintiff employee, known to have fear of heights, take photographs from high places); Taylor v. Phyllis BodelChildcare Center, Superior Court, judicial district of New Haven at New Haven, Docket No. 377237 (July 10, 1996, Licari, J.) (defendants accused plaintiff of child abuse and professional misconduct without investigating such claims, portrayed her as incompetent and unprofessional in evaluations to justify her termination and prevent future employment).
The plaintiff argues that Delisle, Rustigan and Recht engaged in harassment of the plaintiff which included the discriminatory enforcement of workplace rules, withdrawal of the plaintiff's opportunity to work overtime, and unwanted shoulder massages and hugs. This conduct may have been distressing and hurtful to the plaintiff, but it is not conduct "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Board of Education, supra, 254 Conn. 211. Accordingly, the defendants' motion for summary judgment as to the plaintiff's count sounding in intentional infliction of emotional distress is granted.
COUNT SIX — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
Count six of the plaintiff's complaint alleges a cause of action against Delisle, Rustigan and Recht for negligent infliction of emotional distress. Delisle, Rustigan and Recht argue that their motion for summary judgment should be granted because Delisle and Rustigan did not participate in the plaintiff's termination and there is no evidence that Recht's conduct was unreasonable when terminating the plaintiff. The plaintiff counters that prior to his termination, the defendants lied to him and tried to coerce him to stop complaining about the safety and ethical issues at Eaton. The plaintiff contends that this behavior is sufficient to establish a claim for negligent infliction of emotional distress. CT Page 7637
In order to prevail on a claim for negligent infliction of emotional distress, the plaintiff must show that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that distress, if it were caused, might result in illness or bodily harm. . . . Accordingly, negligent infliction of emotional distress in the employment context arises only where it is based upon unreasonable conduct of the defendant in the terminationprocess. . . . The mere termination of employment, even where it is wrongful, is therefore not, by itself, enough to sustain a claim for negligent infliction of emotional distress. The mere act of firing an employee, even if wrongfully motivated, does not transgress the bounds of socially tolerable behavior." Parsons v. United Technologies Corp.,243 Conn. 66, 88-89, 700 A.2d 655 (1997); see also Perodeau v. Hartford,259 Conn. 729, 762, (2002).
First, the plaintiff submits no evidence to show that Delisle and Rustigan took part in the termination process. Moreover, the plaintiff only asserts that Delisle, Rustigan and Recht lied to him and attempted to coerce him in to ceasing his criticism of safety and ethical lapses at Eaton prior to terminating his employment. The plaintiff does not allege any other facts or submit any other evidence to show that the defendants acted unreasonably in the termination process. Accordingly, the defendants' motion for summary judgment as to the plaintiff's count sounding in negligent infliction of emotional distress is granted.
COUNT SEVEN — INTERFERENCE
Count seven of the plaintiff's complaint alleges a cause of action against Delisle for interference. Delisle asserts that the motion for summary judgment should be granted because the plaintiff has submitted no evidence to show that a contractual relationship existed between the plaintiff and Eaton and that he (Delisle) acted solely for his own benefit by inducing Eaton to dismiss the plaintiff. The plaintiff counters that there are genuine issues of material fact as to whether a contract existed and whether Delisle acted in his own self interest.
"A claim for tortious interference with contractual relations requires the plaintiff to establish (1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct.Appleton v. Board of Education, supra, 254 Conn. 212-13. "The agreement [between the plaintiff and the defendant] need not . . . be enforceable by the plaintiff as a contract. . . .The law of course does not object to the voluntary performance of agreements merely because it will not CT Page 7638 enforce them, and it indulges in the assumption that even unenforceable promises will be carried out if no third person interferes. . . . Accordingly, the law not only does not restrict its protection to rights resting on enforceable contractual relationships, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry. . . . Thus it is not essential to the cause of action that the tort has resulted in an actual breach of contract. Wellington Systems,Inc. v. Redding Group, Inc., 49 Conn. App. 152, 167-68, 714 A.2d 21
(1998), cert. denied, 247 Conn. 905, 720 A.2d 516 (1998). There is no merit in the defendants' argument that the motion for summary judgment should be granted because no contractual relationship existed between the parties.
The defendants also claim, however, that there is no evidence that Delisle acted outside the scope of his employment. "[A]n agent acting legitimately within the scope of his authority cannot be held liable for interfering with or inducing his principal to breach a contract between his principal and a third party, because to hold him liable would be, in effect, to hold the corporation liable in tort for breaching its own contract." Id., 168. An agent can be liable for intentional interference with a contract, however, "if it acted in bad faith, maliciously, wantonly or beyond the scope of its authority." Multi-Service v. Town ofVernon, 193 Conn. 446, 451, 447 A.2d 653 (1984).
In his complaint, the plaintiff has alleged that Delisle, acting in bad faith and for personal reasons induced Eaton to terminate the plaintiff from his employment. Moreover, the plaintiff has submitted deposition testimony that states that Delisle had the plaintiff terminated as retaliation for their long standing differences of opinion. The court finds that there are genuine issues of material fact as to whether Delisle interfered with the relationship between Eaton and the plaintiff. Accordingly, the defendants' motion for summary judgment as to the interference count is denied.
By the Court,
Joseph W. Doherty, Judge